**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                                      |   |
|--------------------------------------|---|
| BENJAMIN CUNNINGHAM,                  | ) |
|                                      | ) |
|                                      | ) |
| **Plaintiff,**                        | ) |
|                                      | ) |
| **v.**                                | ) |
|                                      | ) |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) |
|                                      | ) |
| **Defendants.**                       | ) |

) **Civil Action No. 13-188 (RMC)**

_____)

## MEMORANDUM OPINION

Benjamin Cunningham complains of alleged violations of the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, and misconduct by federal officers during a 2005 search of his home in New York. Mr. Cunningham appears *pro se*. He recently has filed a slew of motions, *see* Dkt. Nos. 16, 19, 20, 26, 27, 32, 34, 36, 37, 38, 39, 40, 41, 42, and 44, that seek to obtain summary judgment, compel various Defendants and other non-parties to produce records or affidavits, and sanction certain Defendants for perceived wrongdoing. For the reasons discussed below, the Court will dismiss this case and deny the motions as moot.

## I. FACTS

A. <u>Background</u>

Mr. Cunningham is a repeat litigator, which gives the Court the advantage of knowing the origins of his claims. *See, e.g.*, *Cunningham v. O'Neill*, Case No. 13-960(RMC), 2013 WL 3753554 (D.D.C. July 17, 2013).[1] According to Mr. Cunningham, Deputy Marshals of the United States Marshal Service (USMS) executed a search warrant and entered his New York

---

[1] In *O'Neill*, Mr. Cunningham filed a FOIA suit against ten individual federal officials, several of whom also are named in the instant lawsuit. Because FOIA covers only agencies in the executive branch of government, 5 U.S.C. § 552(f)(1), the case was dismissed for failure to state a claim. *See O'Neill*, 2013 WL 3753554, at *2.

City residence in 2005. In the process of their search, the Deputy Marshals handcuffed Mr. Cunningham while looking for his fugitive brother. Still handcuffed, Mr. Cunningham fled his home and ran into a bus carrying city transit officer-candidates. Those officers held Mr. Cunningham until the Deputy Marshals retrieved and, ultimately, released him. *See Cunningham v. U.S. Congress House Ethics Comm.*, Civil Case No. 12-1935(RMC) (Compl. [Dkt. 1]).[2] Defendants state that no criminal charges were ever filed against any law enforcement officer(s) in connection with these events, Am. Mot. for Summ. J. (Def.'s Mem.) [Dkt. 24] at 2, a fact Mr. Cunningham does not contest. Mr. Cunningham's subsequent efforts to be designated a crime victim under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, proved unsuccessful. Pl.'s Mot. to Compel, Ex. 1 [Dkt. 7-1] at 27.[3]

Mr. Cunningham has brought at least three suits regarding these alleged events in two other jurisdictions. In the Southern District of New York, Mr. Cunningham sued the individual Deputy Marshals and a New York Police Department detective for alleged Fourth and Fifth Amendment violations, and, in a separate suit, he sought a writ of mandamus compelling the Federal Crime Victim Office to provide him crime-victim benefits and counseling, to pay his medical bills related to injuries he sustained on the day his home was searched, and to reimburse him for cash allegedly taken during the 2005 search of his home. The former suit was dismissed in favor of the defendants on summary judgment and the U.S. Court of Appeals for the Second Circuit dismissed the ensuing appeal as frivolous. *See Cunningham v. McCluskey*, Civil Action

---

[2] In *U.S. Congress House Ethics Comm.*, Mr. Cunningham sued U.S. Representative José Serrano and the U.S. House of Representatives Committee on Ethics. The case was dismissed because congressional members and committees are immune from suit for official duties under the Speech or Debate Clause of the U.S. Constitution. *See* Civil Case No. 12-1935(RMC) (D.D.C. Feb. 14, 2013) (Order [Dkt. 5] at 2-3); U.S. Const. art. I, § 6.

[3] For ease of reference, page numbers cited here relating to Mr. Cunningham's pleadings come from the pagination inserted by the electronic case-filing system.

No. 05-10169(DAB), 2011 WL 3478312 (S.D.N.Y. Aug. 8, 2011) (adopting magistrate judge's report and recommendation and determining that qualified immunity barred Mr. Cunningham's Fourth Amendment claim and the availability of a remedy under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, rendered his Fifth Amendment due process claim non-cognizable), *appeal dismissed*, Civil Action No. 11-3597 (2d Cir. Feb. 14, 2012) (mandate), *cert. denied*, 133 S. Ct. 124 (Oct. 1, 2012).  The latter suit was dismissed as well.  *See Cunningham v. Gillis*, Civil Action No. 09-cv-1768 (S.D.N.Y. Feb. 25, 2009) (Order [Dkt. 3]) (finding no factual or legal basis for requiring the Federal Crime Victim Office to extend crime victim benefits to Mr. Cunningham).  Before the U.S. Court of Federal Claims, Mr. Cunningham filed a breach of contract action, claiming that, among others, the magistrate judge and district court judge in *McCluskey* had improperly handled the case and conspired against him.  The Court of Federal Claims dismissed the case for lack of jurisdiction, and the Federal Circuit affirmed.  *Cunningham v. United States*, Civil Action No. 11-330C, 2011 WL 5825147 (Fed. Cl. Nov. 16, 2011), *aff'd*, 479 F. App'x 974 (Fed. Cir. 2012).

B. Mr. Cunningham's FOIA Requests

Mr. Cunningham now has turned to the Freedom of Information Act (FOIA) in an attempt to locate documents to prove his claims.  In 2012, Mr. Cunningham filed FOIA Requests Nos. 12-3595, 12-4031, 1206853, and 13-00146.  All of these requests pertained either to the 2005 search of his home or the refusal to designate Mr. Cunningham a crime victim.

1. *FOIA Request No. 12-3595*

On July 26, 2012, Mr. Cunningham sent a FOIA request to the Department of Justice's (DOJ) Executive Office for U.S. Attorneys (EOUSA) asking for a copy of its "written decision . . . concerning [Mr. Cunningham's] pro-se filed Misconduct Complaint" against

Assistant U.S. Attorney (AUSA) Peter M. Skinner, who defended USMS in *McCluskey*. *See* Defs.' Ex. 9 (Luczynski Decl.) [Dkt. 21-9] ¶ 4; Luczynski Decl., Ex. A [Dkt. 21-10]. EOUSA designated the request as FOIA Request No. 12-3595 and directed the U.S. Attorney's Office for the Southern District of New York (USAO-SDNY) to perform a search for responsive records. Luczynski Decl. ¶ 5; Defs.' Ex. 11 (Smith Decl.) [Dkt. 21-11] ¶ 5. USAO-SDNY searched the Legal Information Office Network System (LIONS), which indicates whether a case is open or closed and whom to contact concerning the identification of responsive records, and the Public Access to Court Electronic Records (PACER), which provides additional case information. Smith Decl. ¶¶ 2, 5. USAO-SDNY then sent an email to AUSA David Kennedy, Chief of the Civil Rights Unit at USAO-SDNY, requesting all records pertaining to Mr. Cunningham. On October 1, 2012, USAO-SDNY reviewed, compiled and sent responsive records to EOUSA. *Id.* ¶¶ 5-6. On October 24, 2012, EOUSA released to Mr. Cunningham 33 pages in full and withheld four pages under FOIA Exemption (b)(5).[4] Luczynski Decl. ¶ 5. EOUSA also notified Mr. Cunningham that its review had located potentially responsive records that originated from USMS, the DOJ Office of Inspector General (OIG), the Department of Health and Human Services (HHS), and the Federal Bureau of Investigation (FBI). It stated that the additional records had been referred to these entities, which would respond directly to Mr. Cunningham. *Id.*; Luczynski Decl., Ex. B [Dkt. 21-10].[5]

---

[4] Mr. Cunningham does not challenge this application of the exemption.

[5] Mr. Cunningham does not challenge the responses of DOJ OIG, HHS, or the FBI to FOIA Request No. 12-3595. With respect to USMS, it appears that the Amended Complaint has attempted to sue eleven individuals—Defendants O'Neill, Gillis, Turman, O'Rourke, Kennedy, Bober, Ricigliano, Does, Norris, Sand, an unnamed confidential informant, and Serrano—for alleged deficiencies in the records production by USMS. *See infra* p. 7-9.

4

2. *FOIA Request No. 12-4031*

On August 10, 2012, Mr. Cunningham sent a complaint to the FBI. Luczynski Decl. ¶ 6. It stated that Marie O'Rourke of the Federal Crime Victims Ombudsman Office, AUSA Kennedy, and FBI Special Agent (SA) Kristina Norris had "refused to provide their written decision concerning [Mr. Cunningham's] federal crime victim status." Luczynski Decl., Ex. C [Dkt. 21-10]. The FBI treated the letter as a FOIA request and forwarded it to EOUSA on September 26, 2012. On that date, Mr. Cunningham asked EOUSA to expedite the request. Luczynski Decl. ¶¶ 6-7; Luczynski Decl., Ex. D [Dkt. 21-10]. Two weeks later, EOUSA assigned number 12-4031 to Mr. Cunningham's August 10, 2012, complaint letter (FOIA Request No. 12-4031) and informed Mr. Cunningham that it would not expedite his request but instead process it in the order it was received. Luczynski Decl. ¶ 8; Luczynski Decl., Ex. E [Dkt. 21-10].

On October 16, 2012, EOUSA directed USAO-SDNY to perform a search for records responsive to FOIA Request 12-4031. Smith Decl. ¶ 4; Smith Decl., Ex. A [Dkt. 21-12]. Because USAO-SDNY recently had performed a search in connection with FOIA Request No. 12-3595, USAO-SDNY asked only AUSA Kennedy and its Victim Witness Coordinator to search for records concerning Mr. Cunningham and his status as a federal crime victim. Neither AUSA Kennedy nor the Victim Witness Coordinator located any responsive records. Smith Decl. ¶ 7. EOUSA subsequently informed Mr. Cunningham on November 8, 2012, that its search pertaining to FOIA Request No. 12-4031 had not revealed any responsive records. Luczynski Decl. ¶ 9; Luczynski Decl., Ex. F [Dkt. 21-10].

Mr. Cunningham appealed this response to the Office of Information Policy (OIP), which oversees agency compliance with FOIA. On December 21, 2012, OIP affirmed

EOUSA's handling and conclusion on FOIA Request No. 12-4031. Luczynski Decl. ¶¶ 10-12. It again told Mr. Cunningham that EOUSA "could not locate records responsive to his request" and concluded that EOUSA's search was "adequate" and "reasonable." Luczynski Decl., Ex. I [Dkt. 21-10].

### 3. *FOIA Request No. 1206853*

On December 5, 2012, Mr. Cunningham wrote again to the FBI, this time asking for a copy of his "Federal Crime Victim Status Written Decision." Defs.' Ex. 13 (Hardy Decl.) [Dkt. 21-13] ¶ 5; Hardy Decl., Ex. A [Dkt. 21-14]. The FBI designated this request FOIA Request No. 1206853 on January 29, 2013. The FBI searched the indices of its Central Records System (CRS) for responsive records and coordinated additional searches by the Office for Victim Assistance (OVA) and SA Norris. Hardy Decl. ¶¶ 6, 17-20; Hardy Decl., Ex. B [Dkt. 21-14]. CRS is the FBI's electronic repository for information compiled for law enforcement purposes as well as administrative, applicant, criminal, personnel, and other files. Hardy Decl. ¶ 11. It is accessed via General Indices and an Automated Case Support System (ACS), which consists of Investigative Case Management, Electronic Case File, and a Universal Index, by searching for the subject. *Id.* ¶¶ 11-15.

On February 1, 2013, the FBI informed Mr. Cunningham that it had not located any records responsive to FOIA Request No. 1206853. Hardy Decl. ¶ 7; Hardy Decl., Ex. C [Dkt. 21-14]. Mr. Cunningham appealed to OIP on February 6, 2013, but OIP closed the case after Mr. Cunningham filed the instant suit. *See* 28 C.F.R. § 16.9(a)(3). *See also* Hardy Decl. ¶¶ 8-9; Hardy Decl., Ex. D [Dkt. 21-14]; Hardy Decl. Ex., E [Dkt. 21-14]; Hardy Decl., Ex. F [Dkt. 21-14].

4. *FOIA Request No. 13-00146*

Mr. Cunningham's last FOIA request before this Court was sent to the DOJ's Office of Justice Programs (OJP) on January 23, 2013. He requested "all documents [concerning his status as a federal crime victim] and a copy of [his] Federal Crime Victim Status Written Decision." Defs.' Ex. 15 (Lee Decl.) [Dkt. 21-15] ¶ 3; Lee Decl., Ex. A [Dkt. 21-16]. OJP assigned number 13-00146 (FOIA Request No. 13-00146) to Mr. Cunningham's January 23 request and directed the Office for Victims of Crime (OVC) to conduct a search for responsive records. Lee Decl. ¶¶ 3, 5. Ultimately, both OJP and OVC conducted searches that located 50 pages of responsive material. Lee Decl. ¶¶ 5-8. On March 1, 2013, OJP produced the 50 pages in full to Mr. Cunningham. *Id.* ¶ 9; Lee Decl., Ex. F [Dkt. 21-21]. OJP realized on May 30, 2013, that it had omitted two responsive documents, consisting of three pages, from its March 1, 2013 production to Mr. Cunningham. It produced these pages in full on June 3, 2013. Lee Decl. ¶ 10, Lee Decl., Ex. G [Dkt. 21-22].

C. The Instant Litigation

Mr. Cunningham seeks to compel the release of records concerning the decision to deny him federal crime victim status. Compl. [Dkt. 1] at 14. In his initial Complaint filed on February 12, 2013, Mr. Cunningham named Representative Serrano, DOJ, the FBI and EOUSA.[6] *Id.* at 1-2. He claimed that Representative Serrano and employees of DOJ, the FBI, and EOUSA "[w]illfully CONCEAL[ED]" records relating to his request for federal crime victim status. *Id.* at 4.

---

[6] Mr. Cunningham named USAO-SDNY, not EOUSA, but the Court has substituted EOUSA because it is the executive office for all of the Offices of the U.S. Attorneys and is the proper defendant.

On March 20, 2013, Mr. Cunningham filed an Amended Complaint, seeking $5 million in damages.[7]  *See* Civil Cover Sheet [Dkt. 1-2] at 2.  Renewing his FOIA request for documents pertaining to the denial of his federal crime victim status, he named eleven individuals as co-Defendants: (1) Sean R. O'Neill, Chief of the Administrative Appeals Staff at OIP; (2) John W. Gillis, former Director of OVC;[8] (3) Kathryn Turman, Program Director of OVA;[9] (4) Marie A. O'Rourke; (5) AUSA Kennedy; (6) AUSA David V. Bober;[10] (7) Deputy U.S. Marshal Nicholas Ricigliano; (8) SA Norris; (9) Judge Leonard B. Sand of the U.S. District Court for the Southern District of New York; (10) an unnamed "Reliable Confidential Informant" to USMS; and (11) Congressman Serrano.  Am. Compl. [Dkt. 6] at 1-3.  After Mr. Cunningham filed suit, the FBI conducted a customary second search, in accordance with its policy.  Def.'s Mem. at 12-13.  The only differences between the searches were that in the second search the FBI searched both main files and cross-references and spelled the entire word "crime."  Hardly Decl. ¶ 19 & n.2.  Mr. Cunningham alleges that Deputy Marshal Ricigliano illegally searched his home and seized his person, and the individual Defendants violated his

---

[7] Although the interposition of an amended pleading ordinarily nullifies the original pleading, *see* 6 Charles Allen Wright *et al.*, Federal Practice and Procedure § 1476 (3d ed. 2013), because Mr. Cunningham is *pro se* and in the interest of justice and judicial economy, the Court will consider claims in the original Complaint and in the Amended Complaint.  *See Sieverding v. Dep't of Justice*, 693 F. Supp. 2d 93, 101 n.2 (D.D.C. 2010) (addressing claims made in *pro se* plaintiffs' original and amended complaints in light of the court's "obligation to construe *pro se* filings liberally" (quoting *Toolasprashad v. Bur. of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002), *denying mot. to amend* 910 F. Supp. 2d 149 (D.D.C. 2012)).

[8] While Mr. Cunningham's Amended Complaint names John W. Gills as a Defendant, the Court agrees with Defendants that he likely meant to name John W. Gillis, who held the relevant job title. *See* Def.'s Mem. at 2 n.6.

[9] Defendants state that Mr. Cunningham erroneously identifies Ms. Turman as an employee of OVC.  *Id.* at 2 n.7.

[10] Defendants state that AUSA Bober works for the U.S. Attorney for the District of New Jersey.  *Id.* at 3 n.9.

rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, as well as his statutory rights under CRVA, by "willfully" destroying documents concerning his federal crime victim status. Am. Compl. at 14, 34. He also demands the production of responsive records maintained by USMS from the individual Defendants. *Id.* at 9.

Mr. Cunningham moved for summary judgment on May 17, 2013. *See* Pl.'s Mot. for Summ. J. [Dkt. 16]. Defendants opposed on May 29, 2013, *see* Defs.' Opp'n [Dkt. 17], and cross-moved for summary judgment and dismissal of the litigation on June 12, 2013. *See* Defs.' Mot. for Summ. J. [Dkt. 21]. The Court entered a *Fox-Neal* Order on June 14, 2013.[11] *See* Order [Dkt. 23]; *see also Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992); *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988). Pursuant to the June 14 Order, Mr. Cunningham filed his Opposition to Defendants' Motion for Summary Judgment on July 11, 2013. *See* Pl.'s Opp'n [Dkt. 28].

## II. LEGAL STANDARDS

### A. FOIA

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exceptions. *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). A plaintiff complaining that an agency failed to comply with FOIA must show that an agency has (1) improperly (2) withheld (3) agency records. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 598 (D.C. Cir. 2004). FOIA authorizes suit only against federal agencies, and the only remedy it provides for the improper withholding of records is injunctive relief. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980); *see also* 5 U.S.C. §§ 552(a)(4)(B), 552(f)(1).

---

[11] On June 14, 2013, Defendants filed an amended Memorandum of Law in connection with their Motion to Dismiss and Motion for Summary Judgment. The Court did not issue another *Fox-Neal* Order because it determined that the differences between Defendants' original and amended Memoranda were the result of scrivener's error.

That means that FOIA is remedied by ordering the production of agency records without money damages. *See, e.g.*, *Kennecott Utah Copper Corp. v. Dep't of the Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996) (finding FOIA only calls for releasing records to a complainant, not publishing the records in the Federal Register). Once requested records are produced, there is no longer a case or controversy, and the FOIA action becomes moot. *See Armstrong v. Exec. Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996).

A defending agency in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010), *aff'd*, *Sanders v. Dep't of Justice*, Civ. No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011). The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive records may exist, but whether the search itself was adequate. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).

Thus, to rebut a challenge to the adequacy of a search, the agency need only show that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 950-51 (D.C. Cir. 1986)). Agencies are not required to search every record system, but agencies must conduct a good faith, reasonable search of those systems of records likely to possess the requested records. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), *overruled in part on other grounds,* 79 F.3d 1172 (D.C. Cir. 1996).

An agency may prove the reasonableness of its search by a declaration by responsible agency officials, so long as the declaration(s) is reasonably detailed and not controverted by contrary evidence or evidence of bad faith. *Military Audit Project*, 656 F.2d at 738. An agency affidavit can demonstrate reasonableness by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard*, 926 F.2d at 1200 (internal citation and quotation marks omitted); *see also id.* at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."). An affiant who is in charge of coordinating an agency's document search efforts in response to a plaintiff's FOIA request is the most appropriate person to provide a comprehensive affidavit in FOIA litigation. *Id.* at 1201. Declarations that contain hearsay in recounting searches for documents are generally acceptable. *Kay v. FCC*, 976 F. Supp. 23, 34 n.29 (D.D.C. 1997), *aff'd,* 172 F.3d 919 (D.C. Cir. 1998) (Table). Once an agency has provided adequate affidavits, the burden shifts back to the plaintiff to demonstrate a lack of a good faith search. *See Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). If a review of the record raises substantial doubt as to the reasonableness of the search, especially in light of "well-defined requests and positive indications of overlooked materials," then summary judgment may be inappropriate. *Founding Church of Scientology v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979).

FOIA "was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27

(D.D.C. 2000) (quoting *Am. Fed'n of Gov't Emps. v. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990)).  As such, agencies are not required to "organize documents to facilitate FOIA responses."  *Goulding v. IRS*, Civ. No. 97-C-5628, 1998 WL 325202, at *5 (N.D. Ill. June 8, 1998) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 162); *see also Blakey v. Dep't of Justice*, 549 F. Supp. 362, 366-67 (D.D.C. 1982) ("FOIA was not intended to compel agencies to become ad hoc investigators for requesters whose requests are not compatible with their own information retrieval systems."), *aff'd*, 720 F.2d 215 (D.C. Cir. 1983) (Table).  In addition, FOIA does not require agencies to create or retain documents.  *Moore v. Bush*, 601 F. Supp. 2d 6, 15 (D.D.C. 2009).  Further, an agency is not required to undertake a search that is so broad as to be unduly burdensome.  *Nation Magazine v. Customs Serv.*, 71 F.3d 885, 891 (D.C. Cir. 1995).  "[I]t is the requester's responsibility to frame requests with sufficient particularity . . . ."  *Judicial Watch*, 108 F. Supp. 2d at 27 (quoting *Assassination Archives and Research Ctr. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989)).  An agency's search must be evaluated in light of the request made.  The agency is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents."  *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

B.  Motion to Dismiss

The individual Defendants assert two bases for dismissing Mr. Cunningham's suit against them.  First, individual Defendants contend that Mr. Cunningham has failed to state a claim under FOIA because that statute applies only to covered federal agencies.  Second, Defendants assert that Mr. Cunningham's alleged constitutional and statutory deprivations fail without regard to whether he is suing the individual Defendants in their official or personal capacities.  As to the former dismissal argument, individual Defendants reason that the Court

lacks subject matter jurisdiction, and as to the latter, individual Defendants argue that Mr. Cunningham fails to state a claim.

###### 1. *Failure to State a Claim*

The individual Defendants argue that Mr. Cunningham has failed to state a claim as to them under FOIA, the First, Fifth, and Fourteenth Amendments, and CVRA. A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the adequacy of a complaint on its face. Even though *pro se* complaints are construed liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972); *United States v. Byfield*, 391 F.3d 277, 281 (D.C. Cir. 2004), the complaint must still be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted).

While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Id.* at 570. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Id.* at 555. Yet, a court need not accept as true legal conclusions set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

2. *Lack of Subject Matter Jurisdiction*

The individual Defendants also assert that the Court lacks jurisdiction because Mr. Cunningham's claims cannot be brought against the individual Defendants in their official capacities. Just as liberally-construed *pro se* complaints must satisfy Rule 12(b)(6), such pleadings must also state a basis for subject matter jurisdiction. "[B]ecause subject-matter jurisdiction is 'an Art. III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982)).

Pursuant to Rule 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject-matter jurisdiction. When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the "'plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Nevertheless, the party asserting subject matter jurisdiction has the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (internal citations omitted)). Furthermore, the court may consider materials outside the pleadings, *Settles v. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005), and it "need not accept factual inferences drawn by plaintiffs if those inferences are

not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions," *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

### C. Motion for Summary Judgment

The claims against the federal agencies (DOJ, EOUSA, and the FBI) are limited to alleged violations of FOIA. The agency Defendants contend that there is no genuine dispute as to any material fact and that they are entitled to summary judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980), *aff'd*, *Rushford v. Smith*, 656 F.2d 900 (D.C. Cir. 1981). In a FOIA case, a court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*,

484 F.2d 820, 826–28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each withheld document, or portion thereof, with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt" from FOIA's requirements. *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks and citation omitted).

## III. ANALYSIS

### A. FOIA Claims Against Individually-Named Defendants

Mr. Cunningham's FOIA suit against the individual Defendants cannot possibly prevail.[12] FOIA relief may only be obtained from covered federal agencies. *See* 5 U.S.C. § 552(a)(4)(B) (granting courts "jurisdiction to enjoin [an] agency from withholding agency records"). An "agency" is "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." *Id.* § 552(f)(1); *see also id.* § 105 (defining "Executive agency" as "an Executive department, a Government corporation, and an independent establishment"). Thus, in FOIA cases, individual federal employees are not proper parties; only *agencies* in the *executive* branch of the Government. *Id.* § 552(f)(1); *see also Martinez v. Bureau of Prisons*, 444 F.3d

---

[12] Defendants argue that the Court lacks personal jurisdiction over Defendants AUSA Bober, AUSA Kennedy, SA Norris, Deputy Marshal Ricigliano, and Judge Sand, who all work and reside in the New York area. Def.'s Mem. at 18-21. The Court agrees that the District of Columbia's long-arm statute is inapplicable to these Defendants and that they lack the requisite minimum contacts to warrant the Court's exercise of personal jurisdiction over them. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1168 (D.C. Cir. 2002); D.C. Code § 13-423(a). In addition, the Court lacks personal jurisdiction over the "Reliable Confidential Informant," who is otherwise unidentified but apparently prompted the search of Mr. Cunningham's home in New York. All claims against these Defendants will be dismissed without prejudice.

620, 624 (D.C. Cir. 2006).  Summary judgment in favor of the remaining individual Defendants must be granted on Mr. Cunningham's FOIA claims against them.

B.  Constitutional and Statutory Claims Against Individually-Named Defendants

Mr. Cunningham alleges that the individual Defendants acted in contravention of certain constitutional and statutory provisions.  It is unclear whether Mr. Cunningham intends to name the individual Defendants in their official or personal capacities.  In light of the Court's obligation to construe Mr. Cunningham's pleadings liberally, *see Haines*, 404 U.S. at 520; *Byfield*, 391 F.3d at 281, it will assume that he intended to sue them in both capacities. Nonetheless, for the reasons discussed below, summary judgment on such claims must be granted to the individual Defendants.

1.  *Individual Defendants Named in Their Official Capacities*

It is a bedrock principle of American law that, as sovereign, the United States is immune from suit unless Congress has expressly waived that immunity.  *See, e.g.*, *Block v. North Dakota ex. rel. Bd. of Univ. & School Lands,* 461 U.S. 273, 287 (1983) ("The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress.").  The United States' exemption from suit is expressed in jurisdictional terms—that is, federal courts lack subject matter jurisdiction over suits against the United States in the absence of a waiver.  *See, e.g., Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) ("[A] plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss.").  Waivers of sovereign immunity are strictly construed, and any doubt or ambiguity is resolved in favor of immunity.  *Lane v. Pena,* 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. Moreover, a waiver of the

Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." (internal citations omitted)). Claims against federal employees in their official capacities are deemed to be claims against the United States. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). To the extent that Mr. Cunningham has sued the individual Defendants in their official capacities, he has failed to state a valid waiver of sovereign immunity. As a result, the Court has no subject matter jurisdiction and will dismiss his claims for damages against the individual Defendants.

2. *Individual Defendants Named in Their Individual Capacities*

Mr. Cunningham argues that the individual Defendants violated his rights under CVRA and the U.S. Constitution. The Court will address the statutory claim first.

No judicial relief may be had under CVRA because that statute does not allow a private party to sue for enforcement. CVRA expressly disallows a suit for damages against the federal government or its officials, *see* 18 U.S.C. § 3771(d)(6), and Mr. Cunningham has failed to carry his "heavy burden" of demonstrating the requisite congressional intent necessary to establish an implied private right of action, *see Samuels v. District of Columbia*, 770 F.2d 184, 194 (D.C. Cir. 1985). Moreover, before the statute is available for recompense, the victim of a crime must establish that an official charging instrument was issued, or a conviction was obtained, against the perpetrator of the crime. *Compare Searcy v. Paletz*, Civil Action No. 7:07-1389, 2007 WL 1875802, at *5 (D.S.C. June 27, 2007) ("[T]he CVRA does not grant victims any rights against individuals who have not been convicted of a crime." (citation and internal quotation marks omitted)), *with United States v. Turner*, 367 F. Supp. 2d 319, 326 (E.D.N.Y. 2005) (interpreting the definition of "victim" in CVRA to include "any person who would be considered a 'crime victim' if the government were to establish the truth of the factual

allegations in its charging instrument.").  Here, none of the individual Defendants has been criminally charged or convicted for acts or omissions associated with the alleged concealment or destruction of records relating to Mr. Cunningham's FOIA requests for records concerning his status as a federal crime victim, which is the gravamen of this action.  (Again, the specifics of the search and Mr. Cunningham's alleged injuries already have been litigated in New York.)  Accordingly, the Court will dismiss Mr. Cunningham's CVRA allegations for failure to state a claim.

Mr. Cunningham's allegations that individual Defendants violated his First, Fifth, and Fourteenth Amendment rights also are unsound.  Although not articulated as such, Mr. Cunningham's claims are covered by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[13]  *Bivens* allowed personal lawsuits for money damages against federal officials who violate known constitutional rights.  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001); *see also Thompson v. Pope*, 397 F. Supp. 2d 28, 32 (D.D.C. 2005).  Mr. Cunningham claims that the individual Defendants' failures to produce records concerning his

---

[13] To the extent that the complaints attempted to raise a claim under the FTCA, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, the Court finds that it lacks subject matter jurisdiction over such a claim.  Pursuant to FTCA, district courts have jurisdiction over torts allegedly committed by federal employees.  *Sloan v. Dep't of Housing & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001).  However, the statute requires initial presentation of any claim to the agency and bars a lawsuit until the administrative process is exhausted.  *McNeil v. United States*, 508 U.S. 106, 113 (1993).  The exhaustion requirement is jurisdictional, which means that a court cannot accept a lawsuit under FTCA until and unless the plaintiff first has attempted a resolution through the agency itself.  *Id.*; 28 U.S.C. § 2675(a).  Neither the Complaint nor the Amended Complaint alleges the necessary facts to demonstrate that Mr. Cunningham presented his claim to any of the agencies.

crime victim status in response to his FOIA requests constituted a constitutional deprivation for which he can recover money damages.[14]

The scope of *Bivens* is narrowly construed. *See Malesko*, 534 U.S. at 68 (Supreme Court consistently has "refused to extend *Bivens* liability to any new context or new category of defendants"). There is no *Bivens* remedy available where a statute provides a "comprehensive system to administer public rights." *Spangola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) (*en banc*) (*per curiam*); *see also Bush v. Lucas*, 462 U.S. 367, 373, 389-90 (1983) (*Bivens* remedies are inappropriate when Congress has itself created a remedy or "declar[ed] that existing statutes provide the exclusive mode of redress"). FOIA presents such a statutory scheme. *Johnson v. Exec. Office for Att'ys*, 310 F.3d 771, 777 (D.C. Cir. 2002). Therefore, *Bivens* does not admit any damages remedy for an alleged violation of FOIA by the individual Defendants.

---

[14] Inasmuch as Mr. Cunningham's *Bivens* allegations are premised on the 2005 search of his home or the denial of federal crime victim status to him, rather than FOIA, the Court finds that he already has litigated those claims and cannot do so again. Mr. Cunningham received a final judgment on the merits denying relief on such claims in the Southern District of New York. *See supra* pp. 1-3. The doctrine of *res judicata*, or claim preclusion, prevents the court from hearing "repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *United States v. Tohono O'Odham Nation*, 131 S.Ct. 1723, 1730 (2011) (citation and internal quotation marks omitted). *Res judicata* prevents the relitigation of claims that were actually litigated in a prior suit and those that could have been litigated but were not. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *see Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (explaining that *res judicata* bars the relitigation of "issues that were or *could have been raised* in [the prior] action.") (emphasis in original) (quoting *Allen*, 449 U.S. at 94). The *res judicata* analysis is unaffected by the fact that not all of the individual Defendants in this case were named in Mr. Cunningham's prior lawsuits. *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402 (1940) (explaining that "parties nominally different may be, in legal effect, the same" (quoting *Chicago, Rock Island & Pac. Ry. Co. v. Schendel*, 270 U.S. 611, 620 (1926)). The Court finds that because the newly named parties are government officials, they are in privity with the parties to the former litigation. *Id.* at 402-03 ("[A] judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government.").

C.  FOIA Claims Against Defendant Agencies

Finally, Mr. Cunningham complains that DOJ, EOUSA, and the FBI have violated FOIA by performing inadequate searches for records that respond to his FOIA Request Nos. 12-4031, 1206853, and 13-00146.

### 1.  *Scope of the Searches*

EOUSA has shown that it conducted a reasonable search in response to FOIA Request No. 12-4031, calculated to discover the requested documents.[15]  *SafeCard*, 926 F.2d at 1201; *Meeropol*, 790 F.2d at 950-51.  At the direction of EOUSA, USAO-SDNY searched for responsive records on October 16, 2012, via LIONS and PACER.  A search of these databases was not the end of the inquiry by USAO-SDNY but instead the starting point for locating relevant records.  Because only one month earlier USAO-SDNY had searched LIONS and PACER in connection with records concerning Mr. Cunningham's FOIA Request No. 12-3595, USAO-SDNY did not repeat that exercise for FOIA Request No. 12-4031.  Rather, USAO-SDNY asked AUSA Kennedy and its Victim Witness Coordinator to search their files for records that might be responsive to FOIA Request No. 12-4031.  Neither of these individuals located any responsive records.

EOUSA's search for additional responsive records was adequate and reasonable for the particular circumstances of this case.  *Truitt*, 897 F.2d at 542.  EOUSA was not required to search every record system.  *Oglesby*, 920 F.2d at 68.  Mr. Cunningham's bald assertions that EOUSA performed an inadequate search, Pl.'s Mot. in Support of Summ J. and Opp'n to Defs.'

---

[15] The Court further notes that Mr. Cunningham's complaint against EOUSA relating to FOIA Request No. 12-4031 is partially mooted.  EOUSA has provided Mr. Cunningham with written decisions concerning his federal crime victim status.  *See* Compl., Ex. 1 [Dkt. 1-1]; Mot. to Compel, Ex. 1 [Dk. 7-1].  This disclosure moots the controversy as to these particular records. *Armstrong*, 97 F.3d at 582.

Mot. for Summ. J. or Mot. to Dismiss (Pl.'s MSJ and Opp'n) [Dkt. 28] at 2-3, are insufficient to overcome the presumption of good faith that EOUSA has established through its declarations. *SafeCard*, 926 F.2d at 1200-01.

The Court also finds that the FBI, through its affidavits demonstrating its multiple search efforts of the relevant databases, has shown that the searches it conducted in response to FOIA Request No. 1206853 were reasonably calculated to discover the requested documents, *SafeCard*, 926 F.2d at 1201; *Meeropol*, 790 F.2d at 950-51. Before answering FOIA Request No. 1206853, the FBI searched CRS for the terms: Benjamin Cunningham; Cunningham, Benjamin; Cunningham, B.; Federal Crim Victim Status Written Decision; Federal Crim Victim Status Written; Federal Crim Victim Status; and Federal Crim Victim. Hardy Decl. ¶ 17. The FBI did not find any documents as a result of these searches. *Id.* After Mr. Cunningham filed suit, the FBI conducted a second records search. The only differences between the first and second searches were that the FBI searched both main files and cross-references and spelled the entire word "crime" for the second search. *Id.* ¶ 19 & n.2. Again, no records were located. *Id.* ¶ 19.

Mr. Cunningham again asserts conclusory claims concerning the inadequacy of the FBI's searches. Without further explanation, he alleges that "Defendants' FOIA searches were NOT sufficiently adequate under FOIA law thru [sic] the 5[th] & 14th Amendments under the principles of the United States Constitution" and that "Defendants have willfully REFUSED to provide FOIA records," including "Federal Crime Victim Intake/Interview Legal Documents" and "Federal Crime Victim Written Decision Legal Documents." Pl.'s MSJ and Opp'n at 2-3. But conclusory claims without an evidentiary basis do not carry a FOIA plaintiff's burden of showing that an agency's search was not in good faith. *Maynard*, 986 F.2d at 560.

Further, Mr. Cunningham claims that SA Norris engaged in criminal conduct by failing to enter her notes from a 2008 interview with Mr. Cunningham into FBI's database of official agency records. Pl's MSJ and Opp'n at 8; 24-33. Putting aside the fact that this claim appears to be outside the allegations made in either the Complaint or Amended Complaint, the Court observes that SA Norris's notes were personal, only to be used to refresh SA Norris's memory if necessary, and FBI agents have some degree of discretion as to what notes might be indexed in CRS. Hardy Decl. ¶¶ 16, 20. Because no charges or charging documents were ever filed in relation to the 2005 search of Mr. Cunningham's residence, the Court finds that the notes were unofficial and the lack of indexing in CRS does not indicate a FOIA violation. Only agency records must be produced in response to a FOIA request. *See Fortson v. Harvey*, 407 F. Supp. 2d 13, 16 (D.D.C. 2005) (determining that, for purposes of FOIA, an Army investigator's notes did not constitute agency records because they "were for personal convenience"), *appeal dismissed*, Civil Action Nos. 05-5192, 05-5193, 2005 WL 3789167 (D.C. Cir. Sept. 1, 2005); 5 U.S.C. § 552(f)(2)(A).

Finally, with respect to FOIA Request No. 13-00146, the Court finds that OJP's searches for records response to that FOIA request were adequate and reasonable. OJP directed OVC to search its records for responsive documents. The OVC program manager searched for the term "Cunningham" in the following storage locations: G: drive, an electronic system for maintaining shared documents; H: drive, an electronic system accessible only to OVC staff and where staff store their personal documents and files; and "Chron files," a paper system consisting of office correspondence ordered chronologically or by date of action. These searches resulted in locating a draft letter from former OVC Director (and current Defendant) Gillis to Mr. Cunningham dated 2008. Lee Decl. ¶ 6. Thus prompted, OJP searched its Executive Secretariat

Correspondence Tracking System for the term "Benjamin Cunningham," and located the control number assigned to Mr. Cunningham's 2008 inquiry. OJP then manually retrieved the response letter from former OVC Director Gillis, Mr. Cunningham's incoming letter, and the attachments from the 2008 paper files. *Id.* ¶ 7. No other responsive records were located. *Id.* ¶ 8. These were all produced.

The Court finds that OJP has demonstrated that it made searches reasonably calculated to discover documents responsive to FOIA Request No. 13-00146. *SafeCard*, 926 F.2d at 1201; *Meeropol*, 790 F.2d at 950-51. Moreover, the systems of records OJP searched were likely to possess the requested information. *Oglesby*, 920 F.2d at 68. Here too, Mr. Cunningham cannot avail himself of bare assertions that the OJP's searches were insufficient. *See* Pl.'s MSJ and Opp'n at 2-3. Such speculative claims cannot overcome the presumption of good faith that agency's enjoy upon submitting an adequate declaration. *SafeCard*, 926 F.2d at 1200.

### 2. *Segregability*

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after redacting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pac. Policing Agreement v. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). Because EOUSA, FBI, and OJP produced in full all of the responsive documents that their searches located, the Court thus finds that no segregable information has been withheld.

## IV. CONCLUSION

While the Court is mindful of its duty to construe *pro se* plaintiffs' complaints liberally, *see* Haines, 404 U.S. at 520; *Byfield*, 391 F.3d at 281, for the reasons discussed above,

the Court will grant Defendants' Motion [Dkt. 24] and close this case. A separate Order accompanies this Memorandum Opinion.

_____/s/_____

ROSEMARY M. COLLYER

Date: August 21, 2013                    United States District Judge